IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FLAGSTAR FINANCIAL & LEASING, LLC f/k/a SIGNATURE FINANCIAL, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. |
| RADTER, INC.; B.M.A.J. CORP; and BORIS MOREV, | ) ) ) ) |
| Defendants. | ) ) |

# COMPLAINT

Plaintiff, Flagstar Financial & Leasing, LLC f/k/a Signature Financial, LLC ( "Plaintiff"), as and for its Complaint against Defendants, Radter, Inc. ("Radter"), B.M.A.J Corp. ("BMAJ"), and Boris Morev ("Morev"), (collectively Radter, BMAJ, and Morev are referred to as "Defendants"), alleges upon information and belief:

## NATURE OF THE ACTION

1. This is an action to recover money damages for breach of contract, breach of associated guaranties, as well as replevin/possession of Plaintiff's collateral, as defined herein.

## JURISDICTION AND VENUE

2. This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) as this action is between citizens of different States and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

3. Venue is proper in this district because, on information and belief, all Defendants reside, maintain principal places of business, or are otherwise located in this district as well as the collateral.

**THE PARTIES**

4. Plaintiff is a New York limited liability company organized and existing under the laws of the State of New York and has a principal place of business at 100 Duffy Avenue, Suite 402, Hicksville, New York 11801.

5. Plaintiff's sole member is Flagstar Bank, N.A., whose main office, per its articles of association, is located in the State of New York at 102 Duffy Avenue, Hicksville, New York, 11801. As such, Plaintiff's sole member is also a resident of the State of New York.

6. Upon information and belief, Radter is an Illinois corporation organized and existing under the laws of the State of Illinois and has a principal place of business at 841 Brian Drive, Crest Hill, IL 60403.

7. Upon information and belief, BMAJ is an Illinois corporation organized and existing under the laws of the State of Illinois and has a principal place of business at 841 Brian Drive, Crest Hill, IL 60403.[1]

8. Upon information and belief, Defendant Morev is an individual resident of the State of Illinois who resides at 715 Ledochowski Street, Lemont, IL 60439.

9. Morev also serves as the agent of Radter, and Radter's registration with the Illinois Secretary of State indicates that its agent is located at 1153 Lee St. #251, Des Plaines, IL 60016.

10. Morev also serves as the agent of BMAJ, and BMAJ's registration with the Illinois Secretary of State indicates that its agent is located at 841 Brian Drive, Crest Hill, IL 60403.

11. Upon information and belief, Morev was and remains the president of Radter and BMAJ.

---

[1] According to the Illinois Secretary of State, BMAJ was dissolved in January 2024.

## FACTUAL BACKGROUND

**Contract 1**

12. On or about February 12, 2021, Radter, as Borrower, entered into an Equipment Finance Agreement (Contract #1013285), (hereinafter "Contract 1") with AMUR Equipment Finance, Inc. ("AMUR"), as Creditor, whereby AMUR provided $169,400.00 to finance Radter's purchase of Two (2) 2019 Freightliner Cascadia 126 (VIN/Serial Nos. 3AKJHHDR7KSKC0198 and 3AKJHHDR0KSKB4419) together with "all personal property installed in, affixed to or used in connection therewith …", (the "Contract 1 Collateral").

13. Contract 1 includes Radter's promise to repay the financed amount and details the terms of Radter's repayment obligations. Specifically, Radter agreed to pay AMUR (and/or any assigns) in fifty-four (54) monthly installments of $3,820.76 each (the "Contract 1 Installment Payments").

14. To secure repayment of the amount financed by AMUR pursuant to Contract 1, Radter granted a first priority security interest in the Contract 1 Collateral to Axis Title, LLC, an affiliate of AMUR.

15. The security interest is described in the text of Contract 1, and AMUR perfected the security interest by recording it with the Illinois Secretary of State's office, as evidenced by the Certificate of Title of a Vehicle issued by the Illinois Secretary of State for each vehicle comprising the Contract 1 Collateral. The Certificates of Title were both issued on April 7, 2021, and are recorded as Title Nos. 21097704623 and 21097704633.

16. In consideration for the financing provided by AMUR to Radter pursuant to Contract 1, Morev personally guaranteed all of the payment obligations owed by Radter to AMUR

3

(or its successors or assigns), including, but not limited to the Contract 1 Installment Payments (the "Contract 1 Guaranty").

17. As further consideration for the financing provided by AMUR to Radter pursuant to Contract 1, Morev, as president of BMAJ, executed an Entity Guaranty whereby BMAJ guaranteed all of the payment obligations owed by Radter to AMUR (or its successors or assigns), including, but not limited to the Contract 1 Installment Payments (the "Contract 1 Entity Guaranty").

18. Morev, as president of Radter, signed an Equipment Acceptance Certificate unconditionally and irrevocably accepting the Contract 1 Collateral and agreeing to be responsible for and perform and comply with all of the obligations, terms, and conditions of Contract 1.

19. By letter dated December 8, 2023, AMUR provided Defendants notice of AMUR's assignment to Plaintiff of "all of [AMUR]'s rights, title and interest in, to and under [Contract 1], in the equipment identified therein … and any other documents, instruments, writings and agreements executed and delivered in connection therewith." That letter also acknowledged that Axis Title, LLC, as an affiliate and agent for the benefit of AMUR who had served as the lienholder on the Contract 1 Collateral, also assigned its rights, title, and interest to Plaintiff.

20. Upon the occurrence of an event of default under Contract 1, Section 13 of Contract 1 provides that Plaintiff may, *inter alia*, (a) accelerate the unpaid balance without notice; (b) require delivery of the Contract 1 Collateral; (c) enter any premises where the Contract 1 Collateral is located and render unusable or take immediate possession of the Contract 1 Collateral; (d) sell, lease, or otherwise dispose of the Contract 1 Collateral at a public or private

4

sale; and (e) pursue one or more remedy available under Contract 1 or any other applicable law or equitable remedy.

21. Pursuant to Sections 12, 13, and 14 of Contract 1, Radter agreed to pay Plaintiff's reasonable attorneys' fees and actual costs including repossession, refurbishing of the Collateral and collection costs.

22. Upon the event of default under Contract 1, Radter agreed to pay a daily default interest rate, the lower of 18.00% annual percentage rate equivalent and the highest amount allowed by law, applied to all sums from the date of default until full repayment.

**Contract 2**

23. On or about June 24, 2022, Radter, as Borrower, entered into a financing agreement (Contract #128416001), which included but not limited to, a Promissory Note, a Master Security Agreement (Equipment), and a Continuing Guaranty, (hereinafter "Contract 2" and together with Contract 1 the "Contracts") with Plaintiff, as Creditor, whereby Plaintiff provided $335,411.52 to finance Radter's purchase of Two (2) 2023 International Model LT625 6x4 Truck Tractors (Serial/ID Nos. 3HSDZAPR1PN394604 and 3HSDZAPR3PN394605) together with "all present and future attachments, accessories, additions, accessions, parts, supplies, and any replacements thereof…", (the "Contract 2 Collateral" and together with the Contract 1 Collateral the "Collateral").

24. Thus, on June 24, 2022, Radter executed a fixed rate Promissory Note agreement with Plaintiff whereby Radter promised to pay to the order of Plaintiff $335,411.52 as consideration for Plaintiff's financing of the Contract 2 Collateral.

5

25. Also on June 24, 2022, Radter, as borrower, executed a Master Security Agreement (Equipment) with Plaintiff whereby Radter granted to Plaintiff a first position security interest in the Contract 2 Collateral.

26. Also on June 24, 2022, Morev, in his individual capacity, executed a Continuing Guaranty (Individual Guarantor) agreement with Plaintiff whereby Morev absolutely and unconditionally guaranteed the full and prompt payment of all obligations due and owing under Contract 2.

27. Pursuant to Contract 2, Radter agreed to pay Plaintiff (including any assigns) in sixty monthly (60) installments of $6,656.52 each (the "Contract 2 Installment Payments"), beginning on July 15, 2022.

28. To secure repayment of the amount financed by Plaintiff pursuant to Contract 2, Radter granted a first priority security interest in the Contract 2 Collateral to Plaintiff.

29. The security interest is described in the text of Contract 2, and Plaintiff perfected the security interest by recording it with the Illinois Secretary of State's office, as evidenced by the Certificate of Title of a Vehicle issued by the Illinois Secretary of State for each vehicle comprising the Contract 2 Collateral. The Certificates of Title were both issued on July 27, 2022 and are recorded as Title Nos. 22208699071 and 22208699073.

30. As further consideration for the financing provided by Plaintiff to Radter pursuant to Contract 2, Morev personally guaranteed all of the payment obligations owed by Radter to Plaintiff (or its successors or assigns), including, but not limited to the Contract 2 Installment Payments (the "Contract 2 Guaranty" and together with the Contract 1 Guaranty and the Contract 1 Entity Guaranty, the "Guaranties").

31. Upon the occurrence of any event of default under Contract 2, Section 8 of Contract 2 provides that Plaintiff may, *inter alia*, (a) accelerate the unpaid balance without notice; (b) enter any premises where the Contract 2 Collateral is located and remove all or any of the Contract 2 Collateral or remain on the premises for the purpose of collecting, preparing, and disposing of the Contract 2 Collateral; (c) recover from Radter the expenses associated with expenses such as those associated recovering and selling the Contract 2 Collateral; (d) sell, lease, or otherwise dispose of the Contract 1 Collateral at a public or private sale; and (e) pursue any remedy available at law or in equity or otherwise available under Contract 2.

32. Pursuant Sections 14 and 15 of Contract 2, Radter agreed to pay Plaintiff's reasonable attorneys' fees and actual costs including repossession, refurbishing of the Collateral and collection costs.

33. Upon the event of default under Contract 2, Radter agreed to pay an interest rate of 12.99% per annum applied to all sums from the date of default until full repayment.

34. Defendants defaulted with respect to their payment obligations under the Contracts and the accompanying notes and Guaranties by: (i) failing to make the Contract 1 Installment Payments due for the month of April 2024 or any of the Installment Payments due thereafter; and (ii) failing to make the Contract 2 Installment Payment due for the month of June 2025 or any of the Installment Payments due thereafter. Consequently, Plaintiff accelerated the balances due under the Contracts and note.

## COUNT I
### (Breach of Contract 1)

35. Plaintiff repeats, reiterates and realleges, Paragraphs 1 through 34 of this Complaint with the same force and effect as if fully set forth herein at length.

36. Radter failed to make the monthly payment due in April 2024, with respect to Contract 1, and any subsequent monthly payments, and that failure has now been deemed to be an event of default of Contract 1.

37. By reason of Radter's failure to make payments when due, Plaintiff accelerated the balance due under Contract 1.

38. Pursuant to Contract 1, Radter agreed that any past due amounts would carry a default interest rate of 18% per annum or the highest amount allowed by law.

39. Pursuant to Contract 1, Plaintiff is entitled to late fees from Radter with respect to each payment it failed to timely make thereunder.

40. As a result of the foregoing, Radter remains indebted to Plaintiff pursuant to Contract 1 in the sum of not less than $88,151.97 (as of October 27, 2025, subject to continued accrual of interest) inclusive of late fees and interest but exclusive of attorneys' fees and costs.

41. By virtue of the foregoing, Plaintiff is entitled to judgment as against Radter with respect to Contract 1 in the amount of not less than $88,151.97, together with appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees.

## COUNT II
### (Breach of Contract 2)

42. Plaintiff repeats, reiterates and realleges, Paragraphs 1 through 41 of this Complaint with the same force and effect as if fully set forth herein at length.

43. Radter failed to make the monthly payment due in June 2025, with respect to Contract 2, and any subsequent monthly payments, and that failure has now been deemed to be an event of default of Contract 2.

44. By reason of Radter's failure to make payments when due, Plaintiff accelerated the balance due under Contract 2.

45. Pursuant to Contract 2, Radter agreed that any past due amounts would carry a default interest rate of 6% per annum above the Note Rate (i.e. a total of 12.99% per annum).

46. Pursuant to Contract 2, Plaintiff is entitled to late fees from Radter with respect to each payment it failed to timely make thereunder.

47. As a result of the foregoing, Radter remains indebted to Plaintiff pursuant to Contract 2 in the sum of not less than $167,449.54 (as of October 27, 2025, subject to continued accrual of interest) inclusive of late fees and interest but exclusive of attorneys' fees and costs.

48. By virtue of the foregoing, Plaintiff is entitled to judgment as against Radter with respect to Contract 2 in the amount of not less than $167,449.54, together with appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees.

## COUNT III
**(Breach of Contract 1 Guaranty and Contract 1 Entity Guaranty)**

49. Plaintiff repeats, reiterates and realleges the allegations set forth in Paragraphs 1 through 48 of the Complaint with the same force and effect as if fully set forth herein at length.

50. In order to induce AMUR, Plaintiff's predecessor-in-interest, to enter into Contract 1, Morev, in return for good and valuable consideration, executed the Contract 1 Guaranty, whereby he absolutely and unconditionally guaranteed the payment and performance of any and all obligations of Radter to AMUR and its assigns, including Plaintiff, with respect to Contract 1, including Contract 1 Installment Payments.

51. By reason of the Contract 1 Guaranty, Morev is liable for all charges (including attorneys' fees and late fees) which are otherwise due and owing from Radter to Plaintiff pursuant to Contract 1.

52. In order to induce AMUR, Plaintiff's predecessor-in-interest, to enter into the Contract 1, Morev, as president of BMAJ, also made the Contract 1 Entity Guaranty, whereby BMAJ

absolutely and unconditionally guaranteed the payment and performance of any and all obligations of Radter to AMUR and its assigns, including Plaintiff, with respect to Contract 1, including the Contract 1 Installment Payments.

53. By reason of the Contract 1 Entity Guaranty, BMAJ is liable for all charges (including attorneys' fees and late fees) which are otherwise due and owing from Radter to Plaintiff pursuant to Contract 1.

54. Accordingly, both Morev and BMAJ remain liable to Plaintiff with respect to the Contract 1 Guaranty and the Contract 1 Entity Guaranty, in the amount of not less than $88,151.97 (as of October 27, 2025, subject to continued accrual of interest), together with appropriate interest thereon, late charges, and reasonable attorneys' fees.

55. By virtue of the foregoing, Plaintiff is entitled to judgment as against Morev pursuant to the Contract 1 Guaranty and against BMAJ pursuant to the Contract 1 Entity Guaranty in the amount of not less than $88,151.97, together with appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees.

**COUNT IV**
**(Breach of Contract 2 Guaranty)**

56. Plaintiff repeats, reiterates and realleges the allegations set forth in Paragraphs 1 through 55 of the Complaint with the same force and effect as if fully set forth herein at length.

57. In order to induce Plaintiff to enter into Contract 2, Morev, in return for good and valuable consideration, executed the Contract 2 Guaranty, whereby he absolutely and unconditionally guaranteed the payment and performance of any and all obligations of Radter to Plaintiff, with respect to Contract 2, including Contract 2 Installment Payments.

58. By reason of the Contract 2 Guaranty, Morev is liable for all charges (including attorneys' fees and late fees) which are otherwise due and owing from Radter to Plaintiff pursuant to Contract 2.

59. Accordingly, Morev remains liable to Plaintiff with respect to the Contract 2 Guaranty, in the amount of not less than $167,449.54 (as of October 27, 2025, subject to continued accrual of interest), together with appropriate interest thereon, late charges, and reasonable attorneys' fees.

60. By virtue of the foregoing, Plaintiff is entitled to judgment as against Morev pursuant to the Contract 2 Guaranty in the amount of not less than $167,449.54, for a total of $250,319.80 together with the Contract 1 Guaranty, together with appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees.

## COUNT V
### (Possession)

61. Plaintiff repeats, reiterates and realleges the allegations contained in Paragraphs 1 through 60 of this Complaint with the same force and effect as if fully set forth herein at length.

62. The Contracts provide that in the event of default, Plaintiff may, without demand or notice of any kind, declare the entire unpaid indebtedness to be immediately due and payable and enter upon the premises where the Collateral is located to take possession of and remove same.

63. Radter has defaulted under the terms of the Contracts. As such, Plaintiff is entitled to immediate possession of the Collateral.

64. Upon information and belief, the Collateral is being held, detained, and converted by the Defendants in contravention of the rights of Plaintiff.

65. By reason of all the foregoing, Plaintiff is entitled to immediate possession of the Collateral, together with "all additions, replacements, accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books…".

66. By reason of the foregoing, Plaintiff is entitled to a judgment of possession against Defendants for the following Collateral: one 2019 Freightliner Cascadia 126 (VIN/Serial No.

3AKJHHDR7KSKC0198), one 2019 Freightliner Cascadia 126 (VIN/Serial No. 3AKJHHDR0KSKB4419), one 2023 International Model LT625 6x4 Truck Tractor (Serial/ID No. 3HSDZAPR1PN394604), and one 2023 International Model LT625 6x4 Truck Tractor (Serial/ID No. 3HSDZAPR3PN394605) together with all additions, replacements, accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books.

  **WHEREFORE**, Plaintiff demands judgment against the Defendants as follows:

(i)  On the First Cause of Action, against Radter, in the sum of not less than $88,262.97 (as of October 27, 2025, subject to continued accrual of interest), together with appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees.

(ii)  On the Second Cause of Action, against Radter, in the sum of not less than $167,449.54 (as of October 7, 2025, subject to continued accrual of interest), together with appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees.

(iii)  On the Third Cause of Action, against Morev and BMAJ, in the sum of not less than $88,151.97 (as of October 27, 2025, subject to continued accrual of interest), together with the appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees.

(iv)  On the Fourth Cause of Action, against Morev, in the sum of not less than $167,449.54 (as of October 27, 2025, subject to continued accrual of interest), together with the appropriate interest thereon, late charges, the costs and disbursements of this action, and reasonable attorneys' fees.

(v)  On the Fifth Cause of Action, against Defendants, for judgment of possession of the Collateral, to wit: one 2019 Freightliner Cascadia 126 (VIN/Serial No. 3AKJHHDR7KSKC0198), one 2019 Freightliner Cascadia 126 (VIN/Serial No. 3AKJHHDR0KSKB4419), one 2023 International Model LT625 6x4 Truck Tractor (Serial/ID No. 3HSDZAPR1PN394604), and one 2023 International Model LT625 6x4 Truck Tractor (Serial/ID No. 3HSDZAPR3PN394605) together with all additions, replacements, accessions, accessories, attachments, substitutions, exchanges, improvements, repairs, parts, replacement parts, manuals and reference books, and

(vi)  For such other and further relief as the Court deems just and proper.

Hinshaw & Culbertson, LLP

By: _/s/_____
    Jack Shadid
    Attorney for the Plaintiff

Jack Shadid (6339658)
Hinshaw & Culbertson LLP
151 North Franklin Street
Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
jshadid@hinshawlaw.com